## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-3062

MARK KOSTELIC,

     Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

     Defendant.

---

## **COMPLAINT**

---

Plaintiff Mark Kostelic ("Plaintiff") brings this action for declaratory and injunctive relief against Jena Griswold, in her official capacity as Secretary of State of Colorado ("Defendant"), as follows:

### NATURE OF THE CASE

1.    This is a lawsuit to enforce laws that, among other things, protect Plaintiff's confidence in Colorado's elections. Colorado's current voter rolls have thousands of active voter registrations that are apparently incorrect. That is because each voter in question either (i) permanently moved out of state and is no longer a citizen of Colorado, or (ii) permanently moved to a different county in Colorado from the county in which they are presently registered.

2.      Pursuant to 52 U.S.C. § 20510(b) of the National Voter Registration Act ("NVRA"), Plaintiff sent a timely notice to Defendant on September 6, 2024, along with an initial dataset. In that notice letter, Plaintiff notified Defendant of these registration anomalies.

3.      Although Defendant responded with explanations for some of the voters in the dataset, Plaintiff has since confirmed that many of the voters Plaintiff identified in the initial dataset continue to be listed as "Active" when they have apparently moved out of state or listed with an old address when they have apparently moved to a different county within the state.

4.      Plaintiff therefore sent a follow-up letter, but Defendant did not respond. Thus, Defendant has not provided any indication that the state will investigate these particular registrations or take action to confirm their validity as required by law. The continuing presence of so many incorrect registrations on Colorado's voter rolls of voters who said they have moved is highly problematic. This demonstrates that Defendant has not made a reasonable effort to maintain Colorado's voter rolls in accordance with the NVRA.

5.      To be clear, Plaintiff is not seeking to remove individuals from the voter rolls, except where a voter provides written confirmation that that individual has moved out of state. Rather, Plaintiff only seeks to have the state follow its existing

statutory procedures by correcting the registrations of voters who have moved, regardless of their race, gender, political affiliation, or any other potentially prejudicial attribute. Voters who have moved out of state should be marked "inactive," while voters who have moved within the state should have their address corrected. Voters who are marked as inactive are not barred from voting, as there are mechanisms that allow them to still vote in an election.

6.     The requested relief not only serves to restore Plaintiff's confidence in the state's elections, but also serves to protect Colorado's voters from vote dilution as well as the people listed in the anomalous registrations. For example, if a voter permanently moved out of state, and another individual uses that voter's information to cast an illegal ballot, this could result in the former Colorado resident being wrongfully accused of having cast the illegal vote. Properly maintaining the voter rolls would protect against such identity theft. Any voters who are active despite anomalies in their registrations can easily confirm their status, either by responding to the requests for confirmation or, if they fail to make this confirmation, by simply reactivating their voter status.

**THE PARTIES**

7.     Plaintiff Mark Kostelic is a resident, taxpayer, and registered voter in El Paso County, Colorado.

8.    Defendant Jena Griswold is the Secretary of State of Colorado, with her office address located at 1700 Broadway, Suite 550, Denver, Colorado, 80290.

## JURISDICTION AND VENUE

9.    This action arises under the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501, *et seq*. Plaintiff has a private right of action as an aggrieved person under 52 U.S.C. § 20510. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides for federal question jurisdiction over cases arising under federal law and the Constitution of the United States.

10.    Additionally, as Plaintiff is seeking relief including declaratory judgment, this Court also has jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

11.    Defendant Jena Griswold is the Secretary of State of Colorado, and her office is located in this judicial district. A substantial part of the events or omissions giving rise to this action occurred in this judicial district. Accordingly, this Court has personal jurisdiction over Defendant, and venue is proper in this Court under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**A.    The NVRA and State Law Require Colorado to Correct Its Voter Registration Lists When Voters Move Outside the Jurisdiction in Which They Are Currently Registered.**

12.    To uphold the integrity of elections, to prevent voter fraud and vote dilution, and to protect our citizens' trust in the election process, the federal government has enacted multiple laws requiring states to maintain their lists of voters.

13.    This is particularly important in the context of absentee voting, where a person could potentially vote multiple times, or third parties could submit votes without the person's knowledge.

14.    Section 8 of the NVRA, 52 U.S.C. § 20507(a)(4)(B), requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address.

15.    The NVRA does not require states to follow a specific program to maintain the accuracy of its voter lists. Rather, 52 U.S.C. § 20507(c)(1)(B) of the NVRA provides a safe harbor under which states "may meet the requirement of subsection (a)(4) by establishing a program" where:

(A)  change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

(B) if it appears from information provided by the Postal Service that—

(i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

(ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

16.    The notice procedure in 52 U.S.C. § 20507(d)(2) allows states to require affirmation or confirmation of a voter's address before voting in an upcoming federal election. It further requires states to remove such voters from the list of eligible voters if they fail to respond to the notice and do not vote in the following two general elections for federal office occurring after the date of the notice:

(2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:

(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and

ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

17.     Additionally, the Help America Vote Act ("HAVA") requires each state to implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level," in accordance with the NVRA. 52 U.S.C. § 21083(a).

18.     In accordance with the NVRA, Colorado has implemented voter list maintenance procedures, which are codified in Col. Rev. Stat. § 1-2-101, *et seq*.

19.     Col. Rev. Stat. § 1-1-107(1) assigns Defendant, the Secretary of State, with the responsibility to "coordinate the responsibilities of the state" under the NVRA.

20.     Col. Rev. Stat. § 1-2-302.5 details the state's voter list maintenance procedures for changes of addresses.

21.     Specifically, § 1-2-302.5(1) provides that the Secretary of State shall conduct a monthly search comparing voter addresses to changes of address information from the United States Postal Service ("USPS"):

(1) The secretary of state shall conduct a monthly national change of address search, using the national change of address database administered by the United States postal service, for all electors whose names appear in the statewide voter registration list.

22.    Under Col. Rev. Stat. § 1-2-302.5(2)(b)(I), if the search indicates that a voter moved within the state, a county must mark the voter's record as "Active," update the voter's record with the new address, and send a notice and return form to the voter's old address allowing the voter to verify or correct the address information. If the voter returns the form and indicates that the voter has not moved, the county must correct the voter's address to the prior address.

23.    In contrast, under Col. Rev. Stat. § 1-2-302.5(2)(b)(III), if the search indicates that a voter moved outside of the state, a county must mark the voter's record as "Inactive" and send a confirmation card to the voter. If the voter returns the confirmation card and indicates that they have not moved, the county must correct the voter's address to the prior address and mark the voter's record as "Active."

**B.    Plaintiff Discovered That Colorado Includes Many Incorrect Registrations on its Voter Lists.**

24.    An initial set of voter registration data was purchased from the Colorado Secretary of State on July 16, 2024.

25.    The names and addresses for each voter were submitted through the USPS Coding Accuracy Support System ("CASS®") and compared to information from the USPS National Change of Address database to determine whether they still resided at their address of registration.[1]

26.    The voters were limited to those who affirmatively checked on the USPS Official Mail Forwarding Change of Address form that their move was permanent.

27.    The USPS CASS evaluation is run against several progressively deeper-leveled databases, such as by state, city, five-digit zip code, a check on those three columns together, then a check against the street name with in them, then a street number range check, then a check against the actual street number in the "Zip_4" database, and then a check on the apartment unit at that specific building, then a check if that address is unoccupied, as well as other specialty checks.

28.    Notably, no voters were omitted on the basis of race, gender, age, jurisdiction, political affiliation, or any other potentially prejudicial attribute.

29.    This process identified many voters who apparently either (1) moved out of state but are nonetheless marked as "Active," or (2) moved out of the

---

[1] The NVRA specifically allows for analysis based on the "change-of-address information supplied by the Postal Service through its licensees [to be] used to identify registrants whose addresses may have changed." 52 U.S.C. § 20507(c)(1).

9

jurisdiction in which they are registered but are nonetheless listed with their prior addresses—despite it being a substantial length of time since they moved.

**C.    Plaintiffs Notified Defendant of the Registration Irregularities.**

30.    On September 6, 2024, Plaintiff's counsel sent a notice letter to Defendant pursuant to the NVRA, 52 U.S.C. § 20510(b). A copy of the notice letter is attached as **Exhibit A** to this Complaint.

31.    In the September 6 notice letter, Plaintiff advised that he believed Colorado was violating its duty under 52 U.S.C. § 20507(a)(4)(B) to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to a change of address. Plaintiff detailed Colorado's obligations under Col. Rev. Stat. § 1-2-302.5. Plaintiff also advised that Colorado's failure to timely correct the registrations of voters who had permanently moved outside of the jurisdiction in which they were currently registered unreasonably left voters with incorrect information on the state's voter lists. Plaintiff noted that he intended to file an action seeking declaratory and injunctive relief before this November's federal election unless these issues were corrected.

32.    Plaintiff enclosed with the September 6 notice letter a flash drive with folders containing spreadsheets listing all the identified voters for each county based

on the screening process described above. Spreadsheets listing all the identified voters for each county who moved out of the state were included on the flash drive in a folder titled "Ex. A – Moved Out of State." Spreadsheets listing all the identified ineligible voters for each county who moved within the state but outside of the county or municipality in which they are registered were included on the flash drive in a folder titled "Ex. B – Moved Within State But Out of County." The column headings indicated the voter's name, registration status, registration address, date of departure, and new address.

33.    In key part, Plaintiff requested that the state send notices under Col. Rev. Stat. § 1-2-302.5(2)(b)(III) to voters who apparently moved out of state and mark those voters as "Inactive."

34.    Plaintiff also requested that Colorado update the registration records of voters who moved within the state but outside the county in which they are currently registered to list each voter's new address under Col. Rev. Stat. § 1-2-302.5(2)(b)(I).

35.    Importantly, such relief would not harm any active voters. That is because an active voter associated with the identified registrations can simply respond to the notices from Defendant, and even those who fail to respond are not barred from voting. *See* Voter Registration FAQs, COLORADO SECRETARY OF STATE, https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationFAQ.html ("If

your voter registration is inactive, you may change your inactive status by submitting a signed request, an online voter registration application, or making an in-person request. . . . Voters may register through Election Day").

36.    Plaintiff's requested relief would partially protect former Colorado residents from having their identities stolen and used to vote illegally in their names. Moreover, this relief would protect Plaintiff's and all Colorado voters' right to vote by safeguarding them from improper vote dilution. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

37.    Critically, Plaintiff did not ask Defendant to remove any voter's registration from Colorado's voter lists, absent written confirmation from that voter that the voter in fact moved out of state. This is consistent with state law under Col. Rev. Stat. § 1-2-302.5(2)(b)(III)(A).

38.    As the next election for federal office is within 120 days of the September 6 date of the notice letter, 52 U.S.C. § 20510(b)(2) provides that a 20-day notice period began running from September 6.

39.    Defendant responded in a letter dated September 20, 2024. Defendant noted that there was a state "data freeze" between June 26, 2024, and July 18, 2024, which prevented updates to the state's voter lists. Defendant also indicated Plaintiff's data failed to account for military voters deployed to different duty stations and

voters who later moved back to Colorado. As a result, Defendant claimed that Plaintiff's data was out-of-date and unreliable.

40.    Additionally, Defendant included the results of spot checks of thirty voters from Plaintiff's initial data and provided explanations for the accuracy of the registration records for these voters. In several instances, Defendant cited information from data sources that are unavailable to Plaintiff, such as Colorado's SCORE system. The spot checks highlighted issues resulting from:

- The state's data freeze, as described above;

- A few instances where Plaintiff's national change of address ("NCOA") information did not include either a move date or a name;

- Instances where a voter completed a voter registration form or had some other form of contact with the state indicating that the NCOA data was incorrect, after the NCOA move date (such contact generally matched information shown in the "EFFECTIVE_DATE" column of the state's voter registration data);

- An instance where a voter registered after the move date from the NCOA data; and

- An instance where a voter had requested an active duty military ballot (this information is not available in the state's voter registration data).

13

**D.    Plaintiff Obtained New Data and Confirmed that Defendant's Response Fails to Explain Many of the Earlier-Identified Incorrect Registrations.**

41.    Taking Defendant's advice, Plaintiff obtained new voter registration data from the State of Colorado on September 23, 2024. This data was submitted to the same rigorous procedures as the previously obtained data.

42.    Notably, Plaintiff discovered that numerous voters contained in the initial June 2024 data are still listed as "Active" and with incorrect addresses in the more recent September 2024 data. These voter registration records are unexplained by Defendant's response and the data available to Plaintiff.

43.    Plaintiff sent a follow-up letter to Defendant on October 15, 2024. Specifically, Plaintiff requested that Defendant investigate a limited category of voters who are (1) marked as "Active," (2) have both an NCOA move date and NCOA name, and (3) have an NCOA move date occurring after the voter registration "EFFECTIVE_DATE" and "REGISTRATION_DATE." Voters who meet each of these requirements are hereinafter referred to as "Unexplained Voters." If Defendant's investigation were to confirm that an Unexplained Voter moved out of state, Plaintiff requested that the voter's registration be marked as "Inactive." If Defendant's investigation were to confirm that an Unexplained Voter moved to a different county within the state, Plaintiff requested that the voter's registration record be corrected to reflect the new address.

14

44.    By way of example, for El Paso County, the June 2024 data identified 3,625 Unexplained Voters who moved out of state. However, in the September 2024 data, 1,022 of those Unexplained Voters remain with "Active" status on the state's voter rolls—even though these voters advised the USPS that they had permanently moved out of state and no longer reside at the old address contained on the voter rolls. Colorado failed to correct approximately 28.2% of the El Paso County Unexplained Voters from the June data who apparently moved out of state.



45.    Data for other counties show similar numbers.

46.    The continuing presence of so many Unexplained Voters who apparently either (1) moved out of state but are nonetheless marked as "Active" on Colorado's voter rolls voter rolls, or (2) moved within the state but outside of the county in which they are currently registered but who are nonetheless listed with their old address—as shown in the El Paso County example above—demonstrates that Defendant has not made a reasonable effort to maintain Colorado's voter rolls in accordance with the NVRA. Defendant's purported list maintenance efforts have failed to correct an unreasonably large number of voter registrations.

47.    In the October 15 letter, Plaintiff also requested documentation supporting several of Defendant's assertions regarding voters who were the subject of the spot checks.

48.    Defendant, however, never responded to Plaintiff's October 15 letter.[2]

49.    Defendant's failure to correct these registrations is an ongoing, systemic violation of the NVRA and Colorado law.

---

[2] Plaintiff believes that the September 6 notice letter properly placed Defendant on notice of the issues raised in the October 15 letter under under 52 U.S.C. § 20510(b)(2). In any event, Plaintiff has no obligation to provide notice to Defendant of the issues raised in the October 15 letter under 52 U.S.C. § 20510(b)(3), as the next election for federal office is within 30 days of October 15.

**E.**    **Colorado's Inaccurate Voter List Undermines Plaintiff's Confidence in the Election and Burdens Plaintiff's Right to Vote.**

50.    Colorado's improperly maintained voter rolls have undermined (and will continue to undermine) Plaintiff's confidence in the electoral process and also burdened Plaintiff's right to vote. This disenfranchisement is current, ongoing, and not speculative, regardless of whether any vote dilution occurred or will occur. This constitutes an actionable injury in fact. *See, e.g.*, *Judicial Watch, Inc. v. Griswold*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290, at *5–6 (D. Colo. Aug. 25, 2022) (holding that such harm constitutes an injury in fact); *see also Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, at *9, 2023 WL 2572210 (W.D.N.C. Mar. 19, 2023) (same); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (same); *Wis. Voter All. v. Millis*, __ F. Supp. 3d __, No. 23-C-1416, 2024 U.S. Dist. LEXIS 44025, at *12 (E.D. Wis. Mar. 13, 2024) ("[V]oter disenfranchisement through dilution caused by illegal votes might constitute the kind of harm required [to seek judicial review.]").

### COUNT I – VIOLATION OF 52 U.S.C. § 20507(A)(4)(B)

51.    Plaintiff incorporates each of the foregoing paragraphs by reference as though fully set forth herein.

52.    Colorado continues to include on the state's voter lists many Unexplained Voters (1) with "Active" status who have permanently moved out of

17

state, and (2) with old addresses who have permanently moved to a different county within the state from the county in which they are currently registered. As such, Colorado is violating 52 U.S.C. § 20507(A)(4)(B) by failing to make a "reasonable effort" to maintain its voter lists. *See Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 620 (E.D.N.C. 2017) (holding that "a reasonable inference can be drawn that [a county board of elections] is not making a reasonable effort to conduct a voter list maintenance program in accordance with the NVRA" where a plaintiff has made an allegation, "supported by reliable data," that the county is failing to remove ineligible voters and the county board failed to use available information to remove such ineligible voters). Defendant is also thereby failing to meet the requirements of the safe harbor provision of the NVRA. *See* 52 U.S.C. § 20507(c)(1).

53.    Under Col. Rev. Stat. § 1-1-107(1)(d), Colorado's violation of 52 U.S.C. § 20507(A)(4)(B) is ultimately the responsibility of Defendant. As the state's chief election official, Defendant is required to coordinate the state's responsibilities under the NVRA. *See* Col. Rev. Stat. § 1-1-107(1) (designating Defendant, the Secretary of State, as the "chief state election official" and assigning a duty to "coordinate the responsibilities of the state" under the NVRA); 52 U.S.C. § 20509 ("Each State shall designate a State officer or employee as the chief State election

official to be responsible for coordination of State responsibilities under this chapter.").

54.    Defendant's failure to correct these registrations is an ongoing, systemic violation of the NVRA and Colorado law.

55.    As a direct and proximate consequence of Defendant's failure to maintain accurate voter lists, Plaintiff's confidence in the electoral process has been, is being, and will continue to be undermined and Plaintiff's right to vote has been, is being, and will continue to be burdened, unless this Court grants Plaintiff the request relief described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark Kostelic asks this Court to enter judgment against Defendant and all persons in active concert or participation with Defendant, granting the following relief:

A.    Declaratory judgment that Defendant has violated, and continues to violate, the NVRA under 52 U.S.C. § 20507(A)(4)(B) by failing to conduct a general program that makes a reasonable effort to maintain its voter rolls, where Colorado has failed to timely make "Inactive" the registrations of the identified Unexplained Voters who have permanently moved out of state.

B.      Declaratory judgment that Defendant has violated, and continues to violate, the NVRA under 52 U.S.C. § 20507(A)(4)(B) by failing to conduct a general program that makes a reasonable effort to maintain its voter rolls, where Colorado has failed to timely update the addresses of the identified Unexplained Voters who moved within the state but to a different county from the one in which they are currently registered.

C.      An injunction directing Secretary Griswold to direct all county registrars to send notices under Col. Rev. Stat. § 1-2-302.5(III) to all identified Unexplained Voters who permanently moved out of state, and to mark those voters' registration records as "Inactive."

D.      An injunction directing Secretary Griswold to direct all county registrars to send notices under Col. Rev. Stat. § 1-2-302.5(I) to all identified Unexplained Voters who permanently within the state but to a different county from the county in which they are currently registered, update the registration record of each such voter to list the voter's new address, and mark those voters as "Active."

E.      Reasonable attorneys' fees, including litigation expenses, and costs under 52 U.S.C § 20510(c).

Dated: November 1, 2024

Respectfully submitted,

*/s/ Cortland C. Putbrese*

Cortland C. Putbrese
DUNLAP BENNETT & LUDWIG PLLC
6802 Paragon Place, Suite 410
Richmond, VA 23230
Tel: (804) 977-2688
Fax: (804) 977-2680
cputbrese@dbllawyers.com

*Counsel for Plaintiff Mark Kostelic*